UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 0:20-CR-09-DLB

UNITED STATES OF AMERICA,                                                                        PLAINTIFF,

V.                              RECOMMENDED DISPOSITION

CRAIG SIMMS,                                                                                              DEFENDANT.

On the evening of May 9, 2020, Craig Simms was stopped by a Kentucky State Trooper while driving east on Interstate 64 toward Ashland, Kentucky, because his headlights were not on. He moves to suppress the evidence of methamphetamine found in his trunk during a vehicle search because: the officer lacked probable cause to conduct the traffic stop, the stop lasted longer than reasonably necessary to address the alleged traffic violation, and the vehicle search occurred without his valid consent. The United States disagrees with the defendant on all points and asks for an order denying the motion to suppress. The matter came for an evidentiary hearing on October 16, 2020, when the Court heard the testimony of three witnesses. That testimony can be summarized as follows:

Ryan McDavid is the task force commander with the Northeast Kentucky Drug Task Force and is employed by the Ashland Police Department. He testified that on May 9, 2020, Charles Bosley, who lived in Louisville, was expected to transport between 2 and 2.5 pounds of methamphetamine from Louisville to the Ashland area for delivery to a confidential informant. McDavid communicated with a DEA agent in Louisville, who informed him that a CI drove by Bosley's home in Louisville and observed a rental vehicle, described as a dark grey Nissan Altima or Maxima, at his residence. The agent also related to McDavid that Bosley was also known to drive a large SUV. McDavid testified that it is common for drug distributors such as Bosley to

1

travel in pairs of vehicles, and officers knew from past information that Bosley traveled in this manner. In addition, McDavid was informed that the agent in Louisville had a ping on Bosley's phone and could update him with Bosley's location during the undercover operation. McDavid passed this information regarding the expected operation and description of the vehicles to officers in the area with instructions to watch for matching vehicles, believing that they may be carrying a large amount of methamphetamine.

On May 9, 2020, Sgt. Brett Kirkland with the Kentucky State Police received a call informing him that a grey or silver Nissan, possibly operated by Charles Bosley, had just passed through the Winchester area enroute to Ashland Kentucky on I-64, believed to be transporting a large amount of crystal methamphetamine. Sgt. Kirkland, relayed the information on to Post 8, Morehead, around 8:17-8:20 p.m. He informed other officers, including Trooper Alex Vanhoose, to watch for the vehicle and if they observed a violation of law, to stop the vehicle.

Trooper Vanhoose was stopped in place in the median of the interstate 64 observing the east-bound traffic while watching for the vehicle, based on the information he had received from Sgt. Kirkland that it would be travelling east, driven by a Charles Bosley who was transporting crystal methamphetamine. He observed the vehicle at 8:32 p.m. and recalled that it was being followed very closely by another maroon vehicle. In his opinion the vehicle was required to have its headlights on because the sun was down, it was after sunset and he was not able to see the vehicle approaching until it had come "right up on me because it didn't have its headlights on." He initiated a traffic stop at 8:36 p.m., three minutes after sunset as stipulated to by the parties.

When he encountered Mr. Simms, Trooper Vanhoose asked for and was provided Simms's driver's license, the rental agreement and proof of insurance on the vehicle. However, the vehicle was rented in someone else's name, raising a red flag in the Trooper's mind. Trooper Vanhoose

2

stated that he always checks for a valid driver's license, registration, and proof of insurance on vehicles he stops to ensure that the vehicle and the driver are complying with law. During the encounter, Trooper Vanhoose observed that Simms was nervous, tapping on the steering wheel, sweating a lot, and avoiding eye contact. Simms was asked to step out of his vehicle, and Vanhoose and Trooper Mirus, who also arrived at the scene, began talking to him to calm him down. At this point, Trooper Vanhoose testified that Simms was not detained, and could have asked to leave at any time. Simms related to the officers that he was going to Ashland for a few days to visit family but had no luggage in the car. Troopers then asked for and were granted consent to search the vehicle approximately 13 minutes into the stop. At 8:50 p.m., fourteen minutes into the stop, Trooper Vanhoose discovered Charles Bosley's driver's license and debit card in the center console of the vehicle. Simms, however, denied knowing Charles Bosley and stated that the last renter left the license and debit card in the console. Within nineteen minutes of executing the traffic stop, Trooper Vanhoose found methamphetamine in the spare tire compartment in the trunk of the vehicle.

Sgt. Kirkland stated that when he arrived at the scene around 8:55 p.m., one officer was searching the vehicle having already found the crystal methamphetamine. The officer related that Simms had given consent to search the vehicle.

Officer McDavid further testified that on the day of the traffic stop, officers were using an app on the CI's phone, the purpose of which was to provide live monitoring of texts or calls to or from the CI's phone. He testified that Bosley was in contact with the CI, relaying the following information: his location while enroute to Ashland, his estimated time of arrival, statements regarding officers stopping Simms's vehicle, the presence of troopers on the scene of the stop,

Bosley's belief that the drugs were well hidden in the wheel well in the trunk of Simms's vehicle, that he had forgotten his ID in the vehicle, and that officers found the drugs.

## ANALYSIS

In support of suppression, Simms raises the following arguments: first, he asserts that Trooper Vanhoose lacked probable cause to execute a traffic stop; second, that the length of the stop extended longer than necessary to address the purpose of the stop, and finally, that no valid consent was given to search the vehicle.

## THE STOP

Trooper Vanhoose was possessed of a reasonable suspicion that the vehicle he stopped was at that time engaged in criminal activity, and as a result it was not improper for him to engage in an investigatory stop. To institute an investigatory stop, a police officer needs to have "reasonable suspicion" that a crime has occurred. Terry v. Ohio, 392 U.S. 1 (1968). While it is difficult to identify a precise formulation for what constitutes reasonable suspicion, the Supreme Court has stated: "the essence of all that has been written is that the totality of the circumstances - the whole picture - must be taken into account. Based upon that whole picture the detaining officers must have a *particularized and objective basis for suspecting the particular person stopped of criminal activity*." United States v. Cortez, 449 U.S. 411, 417-18 (1981) (emphasis added). Reasonable suspicion is a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996) (internal citation omitted). Therefore, when evaluating a police officer's conduct, the reviewing court must give "due weight" to the "specific

4

reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." United States v. Atchley, 474 F.3d 840, 847 (6th Cir. 2007).  Information from others, including an informant may form the basis for reasonable suspicion. See Adams v. Williams, 407 U.S. 143 (1972). To provide reasonable suspicion, informant's information does not have to be of the same quantity or quality as would be necessary to support a probable cause determination. Id. at 147; see also Alabama v. White, 496 U.S. 325, 329 (1990) ("[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause."). Recent precedent from the Sixth Circuit reinforces that even information from anonymous informants can be sufficient to provide reasonable suspicion. See United States v. Atchley, 474 F.3d 840, 847 (6th Cir. 2007).

     Trooper Vanhoose reported stopping the vehicle due to an observed traffic violation, for failing to have its headlights illuminated.  He believed this to be a traffic violation because the sun was down, it was after sunset and he was not able to observe the vehicle's approach until it had come "right up on me because it didn't have its headlights on."  In addition, he stated that his stop of the vehicle was influenced by more than the headlight violation alone. He considered Sgt. Kirkland's directive to watch for a matching vehicle travelling east, driven by a Charles Bosley who was transporting crystal methamphetamine, and if a traffic violation was observed conduct a stop.  In Trooper Vanhoose estimation he considered his training in drug interdiction in deciding to execute a stop based upon his knowledge and observation of evidence consistent with drug trafficking, including: two vehicles travelling closely together, one matching the description of a reported vehicle, with information that the vehicle was involved with moving narcotics to Ashland Kentucky. As a result, Vanhoose presented a particularized and objective basis to support the stop in this instance, information which gave him a reasonable suspicion that the vehicle he stopped

5

was then engaging in criminal activity. However, even assuming, arguendo, that Trooper lacked reasonable suspicion, he had probable cause to effect the stop.

## PROBABLE CAUSE

The Defendant contends that he was stopped without probable cause. He rests this argument on the fact that, as stipulated by the parties, sunset occurred at 8:33 p.m., and he was stopped at 8:36 p.m. for failure to have his headlights illuminated. Simms argues that under the law in Kentucky, he was not required to illuminate his headlights until 30 minutes following sunset and he was therefore not committing a traffic violation by driving without headlamps at 8:36 p.m. Although the applicable statute does provide a requirement that headlights on a vehicle be illuminated from thirty minutes after sunset to thirty minutes before sunrise, that statue provides an additional requirement:

> (1) Headlamps, when required on a vehicle, shall be illuminated:
>
> > (a) During the period from one-half (1/2) hour after sunset to one-half (1/2) hour before sunrise; and
> >
> > (b) *At such other times as atmospheric conditions render visibility as low as or lower than is ordinarily the case during that period.*
>
> (2) Provisions as to distances that lights must be visible refer to visibility under ordinary atmospheric conditions

KRS 189.030 (emphasis added).

The evidence before the Court in this case supports a finding that Trooper Vanhoose had probable cause to conduct a traffic stop. KRS 189.030(1)(b) provides that headlights are required to be illuminated on a vehicle "at such other times as atmospheric conditions render visibility as low as or lower than is ordinarily the case during that period." In this case, Trooper Vanhoose testified that he executed a traffic stop on Simms's vehicle after he observed the vehicle at 8:32

p.m., believing it was required to have its headlights on because the sun was down, it was after sunset and he was not able to observe the vehicle's approach until it had come "right up on me because it didn't have its headlights on." If a police officer has probable cause to believe a civil traffic violation has occurred, he may lawfully stop the vehicle. See United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2003). With respect to traffic stops, the Sixth Circuit has held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." United States v. Bradshaw, 102 F.3d 204, 210-11 (6th Cir. 1996) (citing United States v. Ferguson, 8 F.3d at 391 (6th Cir. 1993)). Moreover, "[t]he stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." United States v. Odoms, 2006 WL 3484025, *9 (E.D. Tenn. Nov. 30, 2006).

Therefore, based upon the uncontradicted testimony at the evidentiary hearing, Trooper Vanhoose presented evidence of a violation of KRS 189.030(1)(b), as based upon his personal observation leading him to believe that probable cause existed to believe that a traffic violation was at that time being committed due to Simms failing to have his headlamps on, considering the atmospheric conditions and lower than normal visibility.

## LENGTH OF TRAFFIC STOP

Simms next contends that the traffic stop lasted longer than needed to handle the matter for which the stop was made and therefore violated the Fourth Amendment's proscription of unreasonable searches. He cites Rodriguez v. United States, 575 U.S. 348 (2015), for the position that a seizure is justified only by a police-observed traffic violation and becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation. In this case, he analogizes to *Rodriguez* to argue that the traffic stop in this case was

7

longer than necessary to write a violation notice for failing to have his headlamps illuminated, and was a violation of Simms's Fourth Amendment rights.  However, in Rodriguez, Justice Ginsburg framed this issue before the Court by stating:

> We granted certiorari to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. 573 U.S. ——, 135 S.Ct. 43, 189 L.Ed.2d 896 (2014). Compare, *e.g.,* United States v. Morgan*,* 270 F.3d 625, 632 (C.A.8 2001) (post completion delay of "well under ten minutes" permissible), with, e.g.*,* State v. Baker*,* 2010 UT 18, ¶ 13, 229 P.3d 650, 658 (2010) ("[W]ithout additional reasonable suspicion, the officer must allow the seized person to depart once the purpose of the stop has concluded.").

Id. at 353-54.

In other words, the Court's focus in Rodriguez was whether, absent reasonable suspicion of some criminal activity, a stop may be extended beyond the time necessary to issue a ticket for the observed violation.  But, as stated in *Rodriguez*, "[a]n officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. . . . [H]e may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 355.  Once a stop has been made, any subsequent detention of the individual "must not be excessively intrusive in  that  the  officer's  actions  must  be  reasonably related in  scope  to circumstances justifying the initial interference." United States v. Davis, 430 F.3d 345 (6th Cir. 2005).  Simms contends that the officer lacked reasonable suspicion to extend the roadside stop beyond that necessary to write a ticket for the observed violation. However, the evidence indicates otherwise.

The evidence in this case supports the conclusion that the length of the stop was supported by reasonable suspicion, and the encounter was reasonably related in scope to the purpose of the stop. Trooper Vanhoose testified that after he stopped Simms, he asked for his license, registration and proof of insurance, all routine requests to ensure that the vehicle and driver follow the law.

8

What he observed was that Simms related travelling from Louisville to Ashland to visit family for three days. However, he had no luggage and informed officers he only needed the clothes he was wearing, he presented with nervous twitches such as tapping on the steering wheel and avoided eye contact with the officers, and stated that he had not rented the vehicle he was driving. Finally, Vanhoose testified that based upon his training, two vehicles traveling close together, one matching description of vehicle allegedly moving narcotics, all led him to believe that something else was going on. As in Davis, where the police detained the defendant on suspicion of drug trafficking, the court found that "the police had reasonable suspicion to detain Davis for the additional approximately thirty to forty-five minutes it took for the police to bring the first drug-sniffing dog to the scene." Id. at 354. Likewise, in the present case, testimony indicates that the entire encounter with Simms prior to discovery of the methamphetamine was approximately fourteen minutes. [R. 36 at 12]. Given the facts encountered by Trooper Vanhoose during his investigation, including those cited above, the stop in this case does not extend in time long enough to amount to a violation of the Fourth Amendment, and cannot support suppressing the evidence at issue.

## CONSENSUAL SEARCH

The defendant contends that any consent to search his vehicle was not voluntary. Without articulating a specific basis for the claim he rests his argument, apparently, on the fact that he was stopped and asked to step out of his vehicle by a law enforcement officer dressed in tactical clothing, who then asked if he could search his vehicle. The United States correctly counters that this argument is merely a statement without any support. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated

exceptions.' Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576; Coolidge v. New Hampshire, 403 U.S. 443, 454—455, 91 S.Ct. 2022, 2031—2032, 29 L.Ed.2d 564; Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Davis v. United States, 328 U.S. 582, 593—594, 66 S.Ct. 1256, 1261—1262, 90 L.Ed. 1453; Zap v. United States, 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed. 1477. "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The burden of proving that consent was voluntary is on the government. Id. at 222, 93 S.Ct. 2041. "[C]onsent must be proved by clear and positive testimony, and, to be voluntary it must be unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." United States v. Scott, 578 F.2d 1186, 1188–89 (6th Cir.1978). The defendant's knowledge of his right to refuse to consent is a factor, but the government need not prove that the defendant had such knowledge to establish that consent was voluntary. Schneckloth, 412 U.S. at 226–27, 93 S.Ct. 2041. "The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." Florida v. Bostick, 501 U.S. 429, 439 (1991). The appropriate inquiry in these situations, Bostick reminds us, "is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Id. at 436.

So, the question now before the court is whether a reasonable person would have felt free to decline consent. Based upon the standard stated above, the undersigned cannot find that Simms's was forced to consent to the search of his vehicle, and the evidence supports a finding

10

that the United States has proven, by clear and positive testimony, that Simms freely gave voluntary consent to search his vehicle. Simms had been pulled over, presented as being very nervous, and failed to provide officers with a rental agreement for the vehicle in his name. In addition, he related traveling to visit family for three days, yet did not even have an overnight bag. He was, finally, in the presence of two officers, but that is the extent of evidence of coercion, and the undersigned does not find it sufficiently coercive to justify a belief that he was unable to refuse to allow a search of his vehicle. Trooper Vanhoose testified that Simms was never told he was not free to leave, he was never told he was being detained. The trooper testified that he and Trooper Mirus just asked him "straight up" if they could search his vehicle, and he provided consent to do so. Therefore, the search of Simms's vehicle was not in violation of his rights under the Fourth Amendment.

Therefore, IT IS RECOMMENDED that the Defendant's motion to suppress [R. 37] should be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. Fed. R. Crim. P. 59; *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Crim P. 59(b)(2).

Signed November 16, 2020.



Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge