UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL ACTION NO. 20-9-DLB-EBA

UNITED STATES OF AMERICA                                                                   PLAINTIFF

v.           **ORDER ADOPTING RECOMMENDED DISPOSITION**

CRAIG SIMMS                                                                                      DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Magistrate Judge Edward B. Atkins's Recommended Disposition (Doc. # 52), wherein he recommends that Defendant Craig Simms's Motion to Suppress (Doc. # 37) be denied.  Defendant having filed Objections to the Recommended Disposition, (Doc. # 56), and the United States having replied, (Doc. # 60), the Recommended Disposition is now ripe for the Court's review.  For the reasons set forth herein, Defendant's Objections are **overruled**, the R&R is **adopted** as modified herein, and the Motion to Suppress is **denied**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On May 9, 2020, law enforcement officers learned that Charles Bosley, a defendant in this case, was expected to transport approximately two pounds of methamphetamine from Louisville to a confidential informant ("CI") in Ashland.  (Doc. # 59 at 48).  A Louisville Detective contacted the commander of the Northeast Kentucky Drug Task Force, Ryan McDavid, to inform him that a known CI drove by Bosley's home and observed a rental vehicle, described as a dark grey Nissan.  (*Id.* at 49-50).  The agent further informed McDavid that Bosley often drove a large silver SUV.  (*Id. a*t 50).  McDavid

1

testified that it was common for drug distributors to travel in pairs of vehicles and that Bosley was known to travel in this manner. (*Id.* at 51). McDavid gave this information, including the vehicle descriptions, to officers with the Kentucky State Police ("KSP"). (*Id.* at 50).

At approximately 8:20 p.m. on May 9, 2020, Sergeant Kirkland of the KSP informed officers over the radio, including Trooper Vanhoose, that a silver Nissan was traveling from Louisville to Ashland on I-64 eastbound and was carrying narcotics.[1] (Doc. # 59 at 5-6, 10, 16, 23). Kirkland further informed the officers that the silver Nissan had recently passed Winchester, Kentucky, around forty miles west from where Trooper Vanhoose was stationed in Morehead, Kentucky.[2] (*Id.* at 15, 23). The driver of the vehicle was suspected to be Bosley. (*Id.* at 16, 23). Around 8:30 p.m., Trooper Vanhoose observed the described vehicle traveling eastbound on I-64 without its headlights illuminated and noticed a second vehicle was following the silver Nissan very closely. (*Id.* at 16-17). During the hearing, Vanhoose explained that in drug interdiction, there is often a lead car and a trail car, with one carrying money and one carrying narcotics. (*Id.* at 17). Vanhoose believed that the silver Nissan violated traffic laws by not using its headlights after dusk as he could not see the car "till it was almost right up on [him]." (*Id.* at 18). Vanhoose stopped the vehicle at 8:36 p.m. (*Id.* at 18, 22).

Trooper Vanhoose further testified that he made the stop because the vehicle "didn't have its headlights on, and . . . that it was being followed very closely by another

---

[1]  During Trooper Vanhoose's testimony, counsel for Simms elicited information that in a hearing in Rowan County Court, Vanhoose testified that he was only told to look out for a dark rental car. (Doc. # 59 at 31-32).

[2]  The Court takes judicial notice of the distance between Winchester, Kentucky and Morehead, Kentucky. S*ee* FED. R. EVID. 201.

2

vehicle," activity which was consistent with drug interdiction based on his training. (Doc. # 59 at 17). After observing the vehicles traveling closely together, combined with the previous information relayed to Trooper Vanhoose by Sergeant Kirkland, Vanhoose stated he "put two and two together" and "it kind of clicked in my head that that is probably the vehicle that's going to be carrying the narcotics." (*Id.*). On the uniform citation, Vanhoose stated he stopped the vehicle because the headlights were off at a time less than thirty minutes before dusk. (*Id.* at 33). The statute Vanhoose was purportedly enforcing, Ky. Rev. Stat. § 189.030(1), states, "[h]eadlamps, when required on a vehicle, shall be illuminated: (a) [d]uring the period from one-half (1/2) hour *after sunset* to one-half (1/2) hour before sunrise; and (b) [a]t such other times as atmospheric conditions render visibility as low as or lower than is ordinarily the case during the period." (emphasis added). The sunset on May 9, 2020 was at 8:33 p.m. (Doc. # 59 at 35). The stop occurred three minutes later at 8:36 p.m. (*Id.*). Trooper Vanhoose justified the stop because he could not see the vehicle until it was right in front of him. (*Id.* at 36). During the stop, Vanhoose asked Simms to turn on his head lights and did not plan on issuing him a ticket. (*Id.* at 37).

During the traffic stop, Vanhoose told Simms why he was stopped, asked for his driver's license, registration, and proof of insurance. (*Id.* at 18). Simms cooperated, explained the vehicle was a rental, and gave Vanhoose the rental agreement and insurance. (*Id.*). Simms's name was not on the rental agreement and Vanhoose described Simms as visibly nervous. (*Id.* at 18-19). At this point, another officer, Trooper Mirus, arrived on the scene. (*Id.* at 18). Trooper Vanhoose asked Simms to step out of the vehicle and began questioning him about where he was going and what his plans

were.  (*Id.* at 19).  During this questioning, Simms stated he was going to Ashland to visit family, but Trooper Vanhoose found Simms's explanation suspicious as there was no luggage in the car.  (*Id.*).  After a few minutes of questioning, the Troopers asked Simms for his permission to search the vehicle, which he granted.  (*Id.*).  At no point did Trooper Vanhoose tell Simms he was not free to leave, or that he was being detained.  (*Id.* at 20).

During Vanhoose's search of the vehicle, a mere fourteen minutes into the stop, Vanhoose found a driver's license and debit card in the center console belonging to Charles Bosley.  (*Id.* at 19-20, 23).  Upon searching the trunk of the vehicle, Vanhoose discovered a black draw string bag in the space for a spare tire.  (*Id.* at 21).  Within the bag was a Walmart bag that held two vacuum sealed bags of a substance Trooper Vanhoose believed to be methamphetamine.  (*Id.*).  The stop, in its entirety, took nineteen minutes.  (*Id.* at 24).

On July 16, 2020, Simms was indicted for Possession with Intent to Distribute Methamphetamine and Conspiracy to Distribute Methamphetamine.  (Doc. # 1 at 1-2). Following his indictment, Simms moved to suppress the evidence obtained in connection with the traffic stop.  (Doc. # 37).  Judge Atkins held a evidentiary hearing on October 16, 2020, (Doc. # 46), and on November 16, 2020, Judge Atkins recommended that Simms's Motion to Suppress be denied, (Doc. # 52).  Defendant timely filed Objections to the Recommended Disposition, (Doc. # 56), and the Government Responded, (Doc. # 60).

Judge Atkins's Recommended Disposition discussed each of Defendant Simms's original suppression arguments in turn – that Trooper Vanhoose lacked probable cause or reasonable suspicion to stop Simms's vehicle, that the length of the stop was extended longer than necessary to effectuate the purpose of the stop, and that the search of the

4

vehicle was not consensual. (Doc. # 52 at 4). First, Judge Atkins explained that Vanhoose possessed reasonable suspicion that the vehicle was engaged in criminal activity and therefore the investigatory stop was justified. (*Id.*) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The Supreme Court has defined reasonable suspicion as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Judge Atkins found that it was reasonable for Trooper Vanhoose to believe Simms was engaged in criminal activity. (Doc. # 52 at 5). Among the circumstances Judge Atkins considered were the vehicle failing to have its headlights on, the information given to Trooper Vanhoose by Sergeant Kirkland signaling that a vehicle traveling east on I-64 was transporting methamphetamine, two vehicles traveling closely together, and one of the vehicles matching the description given by the detective in Louisville. (*Id.* at 5). Evaluating each of these circumstances together, Judge Atkins found that Vanhoose had a "particularized and objective basis to support the stop." (*Id.*).

Next, Judge Atkins opined that even if Trooper Vanhoose lacked reasonable suspicion to stop the vehicle, he had the probable cause necessary to legally stop Simms. (*Id.* at 6). In the traffic stop context, the probable cause determination "is fact-dependent and will turn on what the officer knew *at the time he made the stop*." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (emphasis in original). The Fourth Amendment will not be offended "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring." *Id.* Judge Atkins reasoned that the headlight law at issue, Ky. Rev. Stat. § 189.030(1)(b), requires headlamps to be illuminated "at such times as atmospheric conditions render visibility as low as or lower than is ordinarily the

5

case during that period." (*Id.*). Because of this, Judge Atkins found the secondary requirement, along with Trooper Vanhoose's testimony that he couldn't see the vehicle until it had come "right up on me because it didn't have its headlights on," gave Vanhoose reason to believe a traffic violation was occurring and therefore established probable cause to make the traffic stop. (*Id.* at 6-7).

Second, Judge Atkins considered Defendant Simms's argument that the length of the traffic stop violated the Fourth Amendment because it was longer than necessary to effectuate the purpose of the stop. (*Id.* at 7). Simms argued that under *Rodriguez v. United States*, 575 U.S. 348 (2015), an officer cannot extend a traffic stop for longer than necessary "to address the traffic violation that warranted the stop." *Id.* at 354. Judge Atkins acknowledged *Rodriguez* but deemed it inapplicable to the present case. Judge Atkins noted that, in contrast to *Rodriguez*, there was reasonable suspicion to detain Simms and therefore the stop was not predicated solely on a traffic violation. (Doc. # 52 at 8). Judge Atkins further found that Trooper Vanhoose's actions were "reasonably related in scope to circumstances justifying the initial interference," as required by *United States v. Davis*. 430 F.3d 345, 353 (6th Cir. 2005) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). (*Id.*). Finding both the stop and its length to be reasonable, Judge Atkins concluded that there was no violation of the Fourth Amendment. (Doc. # 52 at 9).

Third, Judge Atkins evaluated Simms's argument that any consent given to search his vehicle was not given voluntarily. (*Id.*). The controlling factor in whether consent is voluntarily given is "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436

6

(1991). Judge Atkins found that the United States proved "by clear and positive testimony, that Simms freely gave voluntary consent to search his vehicle." (Doc. # 52 at 11). In support of this finding, Judge Atkins acknowledged that Simms was never told he could not leave or that he was being detained, and was asked by Trooper Vanhoose if the officers could search his vehicle. (*Id.*).

Simms filed Objections to the Recommended Disposition, in which he challenged the reasonableness of the stop as well as its length. (Doc. # 56). He did not object, however, to Judge Atkins' determination that Simms had consented to the search of the vehicle. The United States having filed a Response to the Objections (Doc. # 60), the motion to suppress and objections are ripe for review.

## II.   ANALYSIS

### A.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion," including a motion to suppress. Under Federal Rule of Criminal Procedure 59(b)(1), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." FED. R. CRIM. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered waiver of the party's right to review. FED. R. CRIM. P. 59(b)(2).

Objections to a magistrate judge's recommended disposition must be "specific written objections to the proposed findings and recommendations." *Id.* This necessitates that "vague, general, or conclusory objections," will not be considered and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). Further, an objection that does "nothing more than state a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v. Shephard*, No. 09-81, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)). Specific objections "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alteration in original) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. July 18, 1997) (unpublished opinion)).

**B.  Defendant Simms's Specific Objections**

Simms raises three arguments in his objections: (1) Trooper Vanhoose lacked probable cause to stop his vehicle, (2) Trooper Vanhoose lacked reasonable suspicion to stop his vehicle, and (3) the length of the stop was unreasonable. (Docs. # 56 at 2, 4-6). Each of these arguments will be addressed in turn.

***1.  Probable Cause***

Simms first argues that, contrary to Judge Atkins's conclusion, there was not probable cause to stop Simms' vehicle. (*Id.* at 2). Simms has no objection to Judge Atkins's assertion that an officer may stop a vehicle based on probable cause that a traffic violation occurred, regardless of what the officer's real motivation may be for effectuating

8

the stop. (*Id.*). Instead, Simms takes issue with Judge Atkins's interpretation of Ky. Rev. Stat. § 189.030. (*Id.* at 3). Trooper Vanhoose's testimony states that he relied on this statute "when he made the decision to stop [Simms's] vehicle." (*Id.*). Simms contends that the stop was invalid because while Simms's headlights were not illuminated, it was only 8:32 p.m. when Trooper Vanhoose observed his vehicle, which was prior to sunset and well before the half hour after sunset when illuminated headlights are required under the statute. (*Id.* at 3-4). In further support of his argument, Simms points out that no government witness testified that "atmospheric conditions rendered visibility lower than is ordinarily the case during that period on that evening. There was no evidence that it was foggy, cloudy, or overcast." (*Id.* at 4). Simms claims that because he was not violating the statute on which Trooper Vanhoose relied in making the stop, there was not probable cause to stop his vehicle. (*Id.*).

The statute at issue, Ky. Rev. Stat. § 189.030(1), states "[h]eadlamps, when required on a vehicle, shall be illuminated: (a) [d]uring the period from one-half (1/2) hour *after sunset* to one-half (1/2) hour before sunrise; and (b) [a]t such other times as atmospheric conditions render visibility as low as or lower than is ordinarily the case during the period." (emphasis added). While Judge Atkins acknowledged that § 189.030(1)(a) did not require Simms to have his headlights on at the time he was stopped, Judge Atkins reasoned that § 189.030(1)(b) gave Trooper Vanhoose the necessary probable cause to stop Simms. (Doc. # 52 at 6). Judge Atkins was persuaded by Trooper Vanhoose's testimony that he did not see Simms's vehicle approaching until it had come "right up on [Trooper Vanhoose] because it didn't have its headlights on." (*Id.*

9

at 7). Judge Atkins used this statement to support a finding that atmospheric conditions rendered visibility so low that Simms had in fact violated the statute. (*Id.*).

In this Court's view, it is unlikely that Simms violated Ky. Rev. Stat. § 189.030. As Simms points out in his Objection, there was no testimony at the evidentiary hearing that atmospheric conditions rendered visibility "as low as or lower than is ordinarily the case during the period" thirty minutes after sunset to thirty minutes before sunrise. (Doc. # 56 at 4). *See* KY. REV. STAT. § 189.030(1)(b). While Trooper Vanhoose testified that he did not see the vehicle until it was fairly close to him, this is not necessarily an indication that visibility was "lower than is ordinarily the case during that period." KY. REV. STAT. § 189.030(1)(b).

The statute itself expressly requires headlights from the period beginning after sunset and lasting until just before sunrise. KY. REV. STAT. § 189.030(1)(a). The second requirement in § 189.030(1)(b), that headlights should be used when visibility is "as low as or lower than is ordinarily the case during the period," therefore contemplates situations not involving sunrise or sunset where visibility is impaired because of factors such as rain or fog. No such factor was present when Simms was stopped. Statutory construction requires statutes be interpreted "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) (quoting *Lake Cumberland Trust, Inc. v. EPA*, 954 F.2d 1218, 1222 (6th Cir. 1992)). If Ky. Rev. Stat. § 189.030(1)(b) was interpreted to mean a violation occurs any time a driver does not have headlights on after sunset, that would render § 189.030(1)(a) to be superfluous. Because statutory construction "avoid[s] an

10

interpretation which would render words superfluous or redundant," the Court finds it unlikely that Simms violated Ky. Rev. Stat. § 189.030 by failing to turn on his headlights. *Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001). Unfortunately for Simms, this finding does not help him in his quest to suppress the evidence.

Here, even without a traffic violation, Trooper Vanhoose's reasonable mistake of law gave him probable cause to pull over the vehicle. *See United States v. Atlas*, No. 2:20-cr-49, 2020 WL 3777054, at *3 (S.D. Ohio July 7, 2020) (citing *Heien v. North Carolina*, 574 U.S. 54, 62-63 (2014) (finding that probable cause can be based on a reasonable mistake of law in the context of a traffic violation)). *Heien v. North Carolina* is particularly instructive in this case. In *Heien*, an officer pulled over a defendant initially due to a faulty brake light. 574 U.S. at 57. After the defendant consented to a search of his vehicle, the officer found cocaine. *Id.* at 58. The defendant challenged the initial cause for the stop because "driving with only one working brake light was not actually a violation of North Carolina law." *Id.* at 58-59. The Supreme Court found that although the defendant was not technically in violation of the law, the officer's error was reasonable and therefore "there was reasonable suspicion justifying the stop." *Id.* at 67. Here, the facts are substantially similar to those in *Heien*. Trooper Vanhoose pulled over Simms for the purported violation of not driving with his headlights illuminated in the time period thirty minutes *prior* to sunset. (Doc. # 59 at 33). The statute's text instead requires that headlights be illumined in the time period thirty minutes *after* sunset. KY. REV. STAT. § 189.030. It was objectively reasonable for Trooper Vanhoose to mistakenly believe that Simms's actions were in violation of Kentucky law. Although he misapplied the statute,

11

his error of law was reasonable and the stop was lawful. *Heien*, 574 U.S. at 67. Accordingly, Defendant's first objection is **overruled**.

### 2. *Reasonable Suspicion*

In addition to probable cause that a traffic violation had been committed, Vanhoose had reasonable suspicion of Simms's involvement in drug trafficking that provided a significant and independent basis to legally stop Simms. The Court "review[s] the reasonableness of police conduct in effectuating a traffic stop under the principles set forth in *Terry v. Ohio*." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012). *Terry* sets forth a two-part test: (1) "whether there was a proper basis for the stop" and (2) "if the stop was proper . . . whether the degree of intrusion was reasonable related in scope to the situation at hand." *Id.* (internal quotations omitted) (quoting *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)). Whether there was a proper basis for the stop is dependent on whether the officer possessed reasonable suspicion. Reasonable suspicion requires that the stop be supported by "specific and articulable facts that give rise to a reasonable suspicion of criminal activity" when evaluating the totality of the circumstances. *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004) (quoting *United States v. Orsolini*, 300 F.3d 724, 728 (6th Cir. 2002)). This "is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). However, when evaluating if there was reasonable suspicion the officer need not meet a "high bar"; instead "the officer needs only 'a minimal level of objective justification' for the stop." *United States v. Coker*, 648 F. App'x 541, 544 (6th Cir. 2016) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 127 (2000)).

Judge Atkins correctly noted that Trooper Vanhoose possessed reasonable suspicion that justified stopping Simms's vehicle. (Doc. # 52 at 5-6). Putting aside any potential traffic violation, the facts known to Trooper Vanhoose were sufficient to create reasonable suspicion that Simms was involved in drug trafficking. Trooper Vanhoose had been told by Sergeant Kirkland that a gray Nissan transporting methamphetamine would be traveling east on I-64 and that the vehicle had a short time earlier passed a point about forty miles to the west. (Doc. # 59 at 6, 16, 23). Vanhoose thus knew the make and color of the car, the direction it was traveling, and a relatively narrow timeframe during which it would be passing. Sure enough, Trooper Vanhoose observed a vehicle fitting the description provided driving on I-64 eastbound around ten minutes after hearing the report on dispatch. (*Id.* at 23). In addition, Vanhoose observed another vehicle traveling closely behind the gray Nissan, which he knew from his training and experience to be common in drug trafficking operations. (*Id.* at 17). Considering the totality of the circumstances surrounding the stop, Trooper Vanhoose had a reasonable suspicion that the vehicle was engaged in criminal activity.

Case law supports this conclusion. In *United States v. Hurst*, 228 F.3d 751, 758 (6th Cir. 2000), the Sixth Circuit held that law enforcement officers may stop a vehicle matching a reported description based in part on its location relative to where it was last seen. The police in *Hurst* were looking for a "dark-colored Thunderbird" that had been spotted leaving the scene of a house robbery. *Id.* at 755. The police stopped a car roughly matching that description in a "location consistent with the time needed to travel [from the victim's] residence." *Id.* at 757. The court held that these facts, "taken together with reasonable inferences, certainly give rise to reasonable suspicion of criminal activity."

*Id.* While the proximity of the vehicle based on the time that had elapsed was more exact in *Hurst*, here, unlike in *Hurst*, the officer knew the road on which the vehicle was travelling and the direction in which it was going. The Sixth Circuit has since relied upon *Hurst* to hold that even basic descriptors such as the color, size, and make of a car, when coupled with location, can give rise to reasonable suspicion justifying a stop. *See United States v. Molina*, 226 F. App'x 523, 528 (6th Cir. 2007). Moreover, in *United States v. Belakhdhar*, the Sixth Circuit recognized that vehicles driving in tandem is a factor law enforcement officers may consider when determining whether the drivers are engaged in drug trafficking. 924 F.3d 925, 928 (6th Cir. 2019). Therefore, the Court here finds that based on the information communicated to Trooper Vanhoose and his personal observations, he had a "particularized and objective basis" for suspecting that Simms was engaged in criminal activity. *Richardson*, 385 F.3d at 630.

The Court rejects Defendant's argument that Trooper Vanhoose's testimony was contradictory and is therefore unreliable. (*See* Doc. # 56 at 5). During his testimony, Vanhoose explained that in Rowan County Court he was testifying from memory instead of what was on the CAD system (the dispatch log), which records what is said over the radio. (Doc. # 59 at 32-33). Trooper Vanhoose clearly explained that he "make[s] numerous traffic stops a day, and numerous ATLs, and [he] couldn't really directly [re]call at that point what kind of car it was." (*Id.* at 33). In essence, Vanhoose could not recall the exact message from Sergeant Kirkland at the time without the assistance of the CAD. Because the CAD recorded what Sergeant Kirkland said over the radio, it likely represents the most accurate description of events. Therefore, the Court does not see any meaningful difference between the account of events given by Vanhoose and finds that

14

the Government still met its burden in showing reasonable suspicion. For all of these reasons, Defendant's second objection is **overruled**.

### 3. *Reasonable Suspicion During the Stop and Length of the Stop*

Even in the absence of reasonable suspicion to justify stopping Simms's vehicle, as discussed above, Trooper Vanhoose had probable cause based on his mistake of law to stop the vehicle initially. Therefore, any observations by Trooper Vanhoose following the stop of Simms's vehicle could also contribute to a finding of reasonable suspicion that permitted investigation beyond the completion of the traffic stop. During the stop, Simms was visibly nervous, and although he provided a rental agreement and proof of insurance, the rental agreement was not in his name. (Doc. # 59 at 18). *See United States v. Winters*, 782 F.3d 289, 300 (6th Cir. 2015) ("drug couriers may commonly drive other people's rental cars") (internal quotation marks omitted). Moreover, the signatory of the rental agreement was not present in the car with Simms, a fact courts have deemed significant in the reasonable suspicion analysis. *See id.* Finally, Simms provided information about his plans to visit his family in Ashland but suspiciously did not have any luggage or clothes in the vehicle corroborating his plans. Doc. # 59 at 19). These circumstances alone likely rose to the level of reasonable suspicion. *See Winters*, 782 F.3d at 299-303 (finding reasonable suspicion to detain a driver further when his "nervousness, inconsistent and implausible travel plans, and odd rental arrangement" were "considered in the aggregate"). Therefore, when combined with the information previously known to Vanhoose, the "minimal level of objective justification" necessary to justify reasonable suspicion is met. *Coker*, 648 F. App'x at 544 (quoting *Wardlow*, 528 U.S. at 123, 127).

Simms argues that the length of the traffic stop was unreasonable because Trooper Vanhoose "continued the detention of the defendant after the mission of the traffic stop was accomplished." (Doc. # 56 at 5). Simms's argument is largely based on the rule in *Rodriguez v. United States*, 575 U.S. 348, 354 (2015), that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop." (citing *Illinois v. Cabelles*, 543 U.S. 405, 407 (2005)). Simms argues that because Trooper Vanhoose testified that he originally pulled Simms over for driving without his headlights illuminated and never intended to write Simms a ticket, the mission of the traffic stop was accomplished within minutes. (Doc. # 56 at 6-9). Further, Simms states that nervousness is not enough to justify prolonging an otherwise completed stop. (*Id.* at 7-8). Unfortunately for Simms, as noted by Judge Atkins, *Rodriguez* is irrelevant in this scenario. (Doc. # 52 at 8). In *Rodriguez*, the Supreme Court clearly stated that an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop" but "may not do so in a way that prolongs the stop, *absent the reasonable suspicion ordinarily demanded to justify detaining an individual*." 573 U.S. at 355 (emphasis added); *see also Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020) ("*Rodriguez* clarifies that any extension of a traffic stop *absent independent reasonable suspicion* is improper.") (emphasis added).

Here, as discussed above, Trooper Vanhoose could legally detain Simms independent of the traffic violation because he possessed reasonable suspicion that Simms was involved in drug trafficking. Therefore, as discussed by Judge Atkins, the relevant question is whether the degree of the intrusion based on the reason for the stop

was reasonable. (Doc. # 52 at 8) (quoting *Davis*, 430 F.3d at 353); *see also Stepp*, 680 F.3d at 661. The stop in its entirety lasted only nineteen minutes. (Doc. # 59 at 24). The Sixth Circuit has upheld stops based on reasonable suspicion that lasted much longer. *See Coker*, 648 F. App'x at 546 (approving a stop lasting thirty-nine minutes in duration); *United States v. Ervin*, 59 F. App'x 631, 635 (6th Cir. 2003) (approving a stop lasting forty-five minutes in duration). However, there is no exact time limit that evidences that a *Terry* stop is unreasonable. *United States v. Winfrey*, 915 F.2d 212, 217 (6th Cir. 1990). Instead, a Court should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Orsolini*, 300 F.3d at 730 (quoting *United States v. Sharpe*, 470 U.S. 675, 687 (1985)). In order to "dispel their suspicions" officers may "continu[e] to question [a defendant] on the same subjects, even if that questioning stretche[s] slightly beyond the completion" of the stop. *United States v. Garrido*, 467 F.3d 971, 984 (6th Cir. 2006). Additionally, "basic investigatory questions before searching [a] vehicle" do not exceed the proper scope of a traffic stop. *United States v. Lyons*, 687 F.3d 754, 769 (6th Cir. 2012).

Here, Trooper Vanhoose and Trooper Mirus attempted to calm Simms down, asked where he was going and what he was doing, asked about his lack of luggage, and eventually asked him whether they could search his vehicle. (Doc. # 59 at 19). As part of a traffic stop, "an officer may make inquiries unrelated to the traffic stop, so long as those questions do not measurably prolong the detention and the detainee's responses are voluntary." *Lyons*, 687 F.3d at 770. Specifically, "[q]uestions relating to travel plans, the driver's authority to operate the vehicle, or the safety of the officer are the sorts of

17

classic context-framing questions directed at the driver's conduct at the time of the stop that rarely offend our Fourth Amendment jurisprudence." *Id.* (quoting *Stepp*, 680 F.3d at 662-63) (internal quotation marks omitted). All of the Troopers' questions were context-framing or utilized to confirm or dispel their suspicions that Simms may be transporting methamphetamine. These suspicions were bolstered by Simms's name not being on the rental agreement, his nervousness, and his improbable travel plans. (Doc. # 59 at 18-19). Additionally, Simms freely gave his consent to search the vehicle, thus extending the stop for an extra five minutes, a fact which Simms does not contest in his Objections. (*Id.* at 19). Taking into account all the circumstances of the stop, and acknowledging that its total duration was less than twenty minutes, the Court finds that this degree of intrusion was reasonable in scope. Accordingly, Defendant's third objection is **overruled**.

### III.    CONCLUSION

Put simply, Defendant fails to raise any meritorious legal objections to Judge Atkins's recommended disposition. Because the Court finds Judge Atkins's analysis and conclusions persuasive, and for the reasons stated herein:

**IT IS ORDERED** that:

(1)    The Magistrate Judge's Recommended Disposition (Doc. # 52) is **adopted** as modified herein;

(2)    Defendant Simms's Objections (Doc. # 56) to the Recommended Disposition are **overruled**;

(3)    Defendant Simms's Motion to Suppress (Doc. # 37) is **denied**;

(4)     The time period from September 11, 2020, through today's date, totaling 110 days, is **excluded** from the provisions of the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(1)(D), (H); and

(5)     The telephonic Status Conference for this matter will remain scheduled for **January 6, 2021, at 1:00 p.m.**  The call-in information is set forth in the Court's December 14, 2020 Order (*See* Doc. # 61).

This 30th day of December, 2020.



Signed By:
*David L. Bunning*   DB
United States District Judge

J:\DATA\ORDERS\Ashland Criminal\2020\20-9 Adopting Recommended Disposition.docx